# In the United States Court of Federal Claims

No. 20-1887

(Filed Under Seal: March 4, 2021)

(Reissued: March 8, 2021)

|  |  |
|---|---|
| THE SEVERSON GROUP, LLC, | Post-award bid protest; priority given to blind persons under the Randolph-Sheppard Act; 20 U.S.C. § 107(a); 34 C.F.R. § 395.33(a); technical evaluation; awardee's representations |
| Plaintiff, | |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| STATE OF HAWAII DEPARTMENT OF HUMAN SERVICES, DIVISION OF VOCATIONAL REHABILITATION, HO`OPONO – SERVICES FOR THE BLIND, | |
| Defendant-Intervenor. | |

Matthew E. Feinberg, PilieroMazza PLLC, Washington, D.C., for plaintiff, The Severson Group.  With him on the briefs were Katherine B. Burrows and Camilla J. Hundley, PilieroMazza PLLC, Washington, D.C.

Zachary J. Sullivan, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the United States.  With him on the briefs were Brian M. Boynton, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., as well as Melissa Martin and Eli J. Corin, United States Navy, Naval Supply Systems Command Fleet Logistics Center, Pearl Harbor, Hawaii.

Daniel F. Edwards, Frost Brown Todd, LLC, Columbus, Ohio, for defendant-intervenor, State of Hawaii Department of Human Services, Division of Vocational Rehabilitation, Ho`opono – Services for the Blind.

# **OPINION AND ORDER**[1]

LETTOW, Senior Judge.

Pending before the court in this post-award bid protest are competing motions for judgment on the administrative record. Plaintiff The Severson Group ("Severson") protests an award by the United States Navy, Naval Supply Systems Command Pearl Harbor's ("Navy" or "government") of a contract for mess attendant services at the Silver Dolphin Bistro, located at Joint Base Pearl Harbor Hickam, Hawaii. Based on findings derived from the administrative record, Severson's motion for judgment on the administrative record and for a permanent injunction is DENIED, and the government's cross-motion for judgment on the administrative record is GRANTED.

## BACKGROUND[2]

### *A. The Solicitation*

On November 27, 2019, the Navy issued the initial version of solicitation number N0060420Q4005 for "[m]ess attendant services at the Silver Dolphin Bistro[,] located at Joint Base Pearl Harbor Hickam, Hawaii." AR 10-31.[3] The services to be provided by the awardee included food preparation, food service, trash removal, and cleaning of the dining facilities. AR 10-44. Severson was the incumbent provider of these services at the Silver Dolphin Bistro. *See* AR 49-1178. Following two amendments, *see* AR tab 11; AR tab 13, the Navy issued Solicitation Amendment 0003 on May 26, 2020 to Severson, Ho`opono, and the two other vendors who had bid on the initial solicitation, *see* AR tab 21.[4] The procurement was subject to

---

[1] Because of the protective order entered in this case, this opinion was initially filed under seal. The parties were requested to review the decision and provide any proposed redactions of confidential or proprietary information. The resulting redactions are shown by ellipses enclosed by brackets, *e.g.* "[xxx]."

[2] The recitations that follow constitute findings of fact by the court from the administrative record of the procurement filed pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"). *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (specifying that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").

[3] The Administrative Record will be cited as "AR Tab - Page Number," *e.g.*, "AR __-__."

[4] On April 9, 2020, after issuing the first two amendments, the Navy awarded a contract to Ho`opono. *See* AR 15-214. Severson filed a bid protest regarding this award with the United States Government Accountability Office ("GAO") on April 20, 2020. *See* AR 16-252. The Navy informed GAO that it intended to take corrective action in response to Severson's protest, including cancellation of the award to Ho`opono, issuance of an amendment to the RFQ, and acceptance of revised quotes. AR 17-389. GAO dismissed the bid protest as "academic" in light of the Navy's planned corrective action. AR 19-392.

2

the Randolph-Sheppard Act and its implementing regulations, such that priority was to be given "to blind persons licensed by a State agency" who bid for contracts to provide vending facility services on Federal property. 20 U.S.C. § 107(b); *see also* 34 C.F.R. § 395.33(a); AR 3-7 (Secretary of Education's determination that "the Randolph-Sheppard Act's priority would apply to" the Performance Work Statement).

The solicitation was for "a one-year base period with four one-year option periods to be exercised at the discretion of the [g]overnment." AR 22-403. Offers were to be evaluated against three factors: technical capability, past performance, and price. AR 22-409. An offeror's technical capability and past performance were to be rated as "acceptable or unacceptable." AR 22-409 to 410. A rating for technical capability was dependent on six sub-factors: technical approach, resumes, cleaning and housekeeping plan, quality control plan, training plan, and phase-in plan. AR 22-410. Under the "technical approach" sub-factor, offerors were required to outline their staffing plan, including "how personnel will be assigned to meet [the Performance Work Statement's] requirements" as well as "overall and immediate supervision at work areas." AR 22-406. Offerors were also required, under the "resumes" sub-factor, to "[s]ubmit resumes of the key personnel, e.g. contract manager, on-site manager, and supervisors, clearly showing [that] qualifications and experience levels match or exceed the minimum qualifications set in Section 7.0 of the [Performance Work Statement]." AR 22-406. "A rating of Unacceptable in any of the sub-factors will render the Technical Capability factor overall rating to also be Unacceptable." AR 22-410. An offeror's rating on the past performance factor would be based on "two aspects[:] . . . whether the quoter's present/past performance is relevant or not relevant to the effort to be acquired," and "how well the contractor performed on the contracts." AR 22-410 to 411.

As for price, the amended solicitation stated that "[a] single award will be made on the basis of the lowest evaluated price of quotes (with the exception of where priority is given to the [State Licensing Agency]) meeting the acceptability standards for non-cost factors." AR 22-409. The solicitation specified that, pursuant to 20 U.S.C. § 107 and 34 C.F.R. § 395.33, "a State Licensing Agency (SLA) that submits an offer will be granted a priority in the source selection . . . . . The SLA may be included in the competitive range even if it is not the lowest priced." AR 22-409.

### B. Offers, the Navy's Evaluation, and the Award Decision

All four of the offerors who had previously bid on the initial solicitation submitted quotes in June 2020. *See* AR tab 37 (Ho`opono's initial quote); AR tab 38 (Severson's initial quote); AR 49-1088 (identifying the other two offerors). With respect to the first two factors, technical capability and past performance, all four quotes were rated "acceptable." AR 49-1089 to 1090. "All four quoters' prices were determined to be reasonable based on adequate price competition" as well. AR 49-1092. While Severson's total evaluated price, the lowest of the four, was

---

Severson filed a second protest with GAO on the same day that the Navy issued the third amendment to the solicitation, *see* AR 24-483 to 498, as well as a supplemental protest on June 2, 2020, *see* AR 26-515 to 518. GAO denied the second protest on August 17, 2020. *See* AR 36-680.

"[xxx] lower than . . . [the] second lowest total evaluated price, the price variance between the other three quoters [was] within [xxx] variance, which indicate[d] that all of the quotes were submitted in anticipation of competition." AR 49-1092. Thus, all four offerors were included in the competitive range. AR 49-1093.

Ho`opono is the State Licensing Agency for Hawaii. Def.'s Resp. & Cross-Mot. for J. on the Admin. R. ("Def.'s Cross-Mot.") at 2, ECF No. 32. Given that the Randolph-Sheppard Act applied to the solicitation, and that Ho`opono had submitted a quote within the competitive range, Ho`opono was "granted a priority in the source selection." AR 49-1093. Following additional price analysis, the Navy concluded that Ho`opono's total evaluated price was "fair and reasonable." AR 49-1093 to 1095. In accord with the priority given to offers submitted by State Licensing Agencies for contracts subject to the Randolph-Sheppard Act, the Navy awarded the contract to Ho`opono. AR 49-1095.

### C. Procedural History

Severson filed a bid protest with GAO on October 1, 2020, alleging four protest grounds: (1) the Navy unreasonably rated Ho`opono's technical capability as "Acceptable," (2) "Ho`opono appears to have engaged in" a material misrepresentation, namely "a bait-and-switch with key personnel," (3) the Navy failed to evaluate Ho`opono's past performance entirely, and (4) the Navy unreasonably concluded that Ho`opono's price was "fair and reasonable." AR 55-1386 to 1387. GAO dismissed the first and third protest grounds on October 14, 2020. AR 59-1439. Severson later "elected not to pursue its protest argument related to the Navy's evaluation of Ho`opono's price," leaving the argument that Ho`opono had engaged in a material misrepresentation. AR 64-1540. On December 4, 2020, however, GAO denied Severson's protest. *The Severson Grp., LLC*, B-418673.5, 2020 WL 7343785 (Comp. Gen. Dec. 4, 2020); AR 69-1619 to 1623.

On December 17, 2020, Severson filed suit in this court. *See* Compl. ECF No. 1. The Navy agreed to a voluntary partial stay until March 1, 2021, *see* Status Report, ECF No. 10, later extended to March 8, 2021, *see* Joint Status Report, ECF No. 43, and Ho`opono subsequently moved to intervene, *see* ECF No. 12. On January 11, 2021, Severson filed a motion for judgment on the administrative record and for a permanent injunction. *See* Pl.'s Mot. for J. on the Admin. R. & for a Permanent Inj. ("Pl.'s Mot."), ECF No. 29. Severson argues that the Navy "failed to comply with the Solicitation criteria and exercised unreasonable judgment in conducting its technical evaluation of Ho`opono, specifically with regard to Ho`opono's Technical Approach, Resumes, and Phase-In Plan." *Id.* at 6-7. Furthermore, Severson alleges that "Ho`opono should be removed from the competition altogether for engaging in a material misrepresentation/bait-and-switch of its Project Manager, a key position." *Id.* at 7. The Navy filed a response and cross-motion on January 22, 2021, arguing that Severson "relies mainly on its speculation and misunderstanding of the solicitation" in its protest. Def.'s Cross-Mot. at 8. Ho`opono filed a response in opposition, claiming that its "representations and staffing plan were accurate, permissible, and reasonable under the [s]olicitation." Def.-Intervenor's Resp. at 7, ECF No. 31. After completion of briefing, *see* Pl.'s Reply & Resp., ECF No. 34; Def.'s Reply, ECF No. 37; Def.-Intervenor's Reply, ECF No. 38, the court held a hearing on February 16, 2021.

**STANDARDS FOR DECISION**

The standards of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, govern the court's consideration of a protest of the government's decisions regarding the award of a contract. *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). Under the APA, the court may set aside a government procurement decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), subject to the traditional balancing test applicable to a grant of equitable relief, *see PGBA, LLC v. United States*, 389 F.3d 1219, 1224-28 (Fed. Cir. 2004); *Hyperion, Inc. v. United States*, 115 Fed. Cl. 541, 550 (2014).

The court may not "substitute its judgment for that of the agency," *Hyperion*, 115 Fed. Cl. at 550 (quoting *Keeton Corrs., Inc. v. United States*, 59 Fed. Cl. 753, 755 (2004) (in turn quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds as recognized in Califano v. Sanders*, 430 U.S. 99, 105 (1977))), but "must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of discretion,'" *id.* (quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009)). "'[T]he deference afforded to an agency's decision must be even greater when a trial court is asked to review a technical evaluation' because of the highly specialized, detailed, and discretionary analyses frequently conducted by the government." *CSC Gov't Sols. LLC v. United States*, 129 Fed. Cl. 416, 434 (2016) (citing *L-3 Commc'ns EOTech, Inc. v. United States*, 83 Fed. Cl. 643, 650 (2008)) (additional citations omitted).

The court may overturn the government's procurement decision only "if '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). In conducting the rational-basis analysis, the court looks to "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," *Axiom*, 564 F.3d at 1381 (quoting *Impresa Construzioni*, 238 F.3d at 1333), and affords "contracting officers . . . discretion upon a broad range of issues," *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018) (quoting *Impresa Construzioni*, 238 F.3d at 1332-33); *see also Glocoms v. United States*, 150 Fed. Cl. 258, 269 (2020) (noting the agency's broad discretion to weigh factors in a best-value procurement). Accordingly, "the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Centech*, 554 F.3d at 1037 (quoting *Impresa Construzioni*, 238 F.3d at 1332-33). Protests alleging a violation of regulation or procedure "must show a clear and prejudicial violation." *Axiom*, 564 F.3d at 1381 (quoting *Impresa Construzioni*, 238 F.3d at 1333).

**ANALYSIS**

Severson, in its motion for judgment on the administrative record, presents two challenges to the Navy's award: (1) the Navy's evaluation of Ho`opono's technical capability was arbitrary, capricious, and an abuse of discretion; and (2) Ho`opono is ineligible for the award "because it engaged in a material misrepresentation/bait-and-switch." Pl.'s Mot. at 10-28. While the court will address each challenge in turn, the court ultimately finds that the asserted errors do not present a basis to overturn the Navy's contract award decision.

### I. Ho`opono's Technical Capability

Severson challenges the Navy's evaluation of Ho`opono's bid under the technical capability factor. Pl.'s Mot. at 11-18. More specifically, Severson points to three sub-factors in asserting that the Navy's evaluation was unreasonable: technical approach, resumes, and phase-in plan. *Id.* at 7.

### A. Technical Approach

Severson first argues that the Navy "misevaluated" Ho`opono's staffing plan in conducting its evaluation under the technical approach sub-factor. Pl.'s Mot. at 11. The solicitation provided historical labor hours "reflect[ing] the historical average workload of the galley" as "[g]uidance" for offerors. AR 22-408. While the solicitation stated that the historical labor hours for the "Food Service Worker" category totaled 23,660, AR 22-408, Severson points out that Ho`opono allocated [xxx] hours to this category in their proposal, Pl.'s Mot. at 12; AR 37-702 (workers identified as "FSS" and "Dishwasher"). Severson contends that Ho`opono's plan amounts to an overstaffing of FSS workers and dishwashers, creating "a significant and concerning inefficiency and a . . . kitchen/workplace safety risk." Pl.'s Mot. at 12. Severson also notes the discrepancy between the hours attributed to the "Food Service Worker (Lead)" category in the solicitation and the hours proposed by Ho`opono. *Id.* at 13. The number of historical hours for this category totaled 7,337.5, AR 22-408, while Ho`opono's quote allocated [xxx] hours to these workers, AR 37-702 (workers identified as "FSS Lead"). Ho`opono assigned [xxx] fewer hours to FSS Lead workers than the number of historical hours despite its assertion that these employees are "[xxx]." AR 37-702. In Severson's view, Ho`opono's staffing plan for FSS Lead workers is a proposal "to significantly *understaff* the Food Service Worker (Lead) positions." Pl.'s Mot. at 13 (emphasis in original). The disparities between the historical hours provided in the solicitation and the hours attributed to different roles in Ho`opono's proposal lead Severson to contend that "Ho`opono's Technical Approach should have been deemed 'Unacceptable,' and Ho`opono should have been excluded from the competitive range." *Id.* at 15.

Severson, however, attributes greater importance to the historical labor hours than the solicitation specified. The table containing the historical labor hours was "for informational and evaluation purposes only . . . . No guarantee [was] made . . . that the historical data provided . . . will necessarily reflect the number of labor hours that the Contractor's personnel shall perform in the execution of this contract." AR 22-408. The historical hours were based on Severson's allocation of labor, as Severson is the incumbent provider of services at the Silver Dolphin

6

Bistro. *See* AR 49-1178. Severson's historical hours by no means establish the required or optimum staffing hours for each position, and Ho`opono's staffing plan is not "unacceptable under the terms of the [s]olicitation." Pl.'s Mot. at 13. Severson contends, for example, that the hours allocated to onsite managers and FSS Lead employees amount to "fewer than the number of hours that the Silver [Dolphin] Bistro is open for customers." Hr'g Tr. 10:21-23 (Feb. 16, 2021).[5] This assertion, however, appears to be the result of a mathematical miscalculation by Severson. Ho`opono's quote assigned [xxx] hours to FSS Lead employees, or an average of [xxx] hours per day. AR 37-702. This proposal appears on its face to be sufficient to cover the daily [xxx] hours between the start of service and closing, even without taking FSS Lead lunch breaks into account. *See* AR 22-424. Given that "the deference afforded to an agency's decision must be even greater when a trial court is asked to review a technical evaluation," *CSC Gov't Sols.*, 129 Fed. Cl. at 434 (citations omitted), the labor hours Ho`opono allocated to each labor category are better characterized as propinquent to the historical hours provided in the solicitation than "fundamentally insufficient" to meet the requirements of the Performance Work Statement, Pl.'s Mot. at 13.

*B. Resumes*

Next, Severson claims that the Navy unreasonably evaluated Ho`opono's proposal under the technical sub-factor regarding resumes. Pl.'s Mot. at 15-16. Per the solicitation, offerors were required to "[s]ubmit resumes of the key personnel, e.g. contract manager, on-site manager, and supervisors, clearly showing [that] qualifications and experience levels match or exceed the minimum qualifications set in Section 7.0 of the [Performance Work Statement]." AR 22-406. Severson points out that Ho`opono provided "only two key personnel resumes: one resume for one Project Manager and one resume for one FSS Lead." Pl.'s Mot. at 16 (citing AR 37-708 to 710) (footnote omitted). Ho`opono's omitted to submit resumes "for the remaining two FSS Lead workers required to fulfill its proposed workforce," and that, Severson argues, amounts to a failure to meet the requirements of this sub-factor. *Id.* The government counters that Ho`opono's production of resumes was sufficient, as the solicitation "did not require resumes for all FSS Leads." Def.'s Cross-Mot. at 13. Ho`opono, in turn, argues that it was not required to submit any resumes for FSS Lead workers because they are not "key personnel" as defined in the solicitation. Def.-Intervenor's Resp. at 11.

The court agrees with the government that the "Resumes" sub-factor did not require the submission of *all* resumes for "key personnel," only enough to show that "qualifications and experience levels match or exceed the minimum qualifications" set forth in the Performance Work Statement. AR 22-406. The text of the Performance Work Statement indicates that the purpose of the sub-factor is to permit the Navy to assess whether the offeror will provide qualified personnel, not whether the offeror has fully staffed their manager and supervisor positions at the time it submitted its quote. *See* AR 22-406. Ho`opono submitted the resumes of [xxx] and [xxx], "personnel that are currently employed by [Ho`opono] for Silver Dolphin Bistro if [the] contract is awarded." AR 37-708. Both of these resumes confirm that [xxx] and [xxx], with extensive experience in food service management, meet the requirements set forth in

---

[5] The date will be omitted from future citations to the transcript of the hearing held on February 16, 2021.

7

Section 7.0 of the Performance Work Statement.  *Compare* AR 37-709 to 710, *with* AR 22-421 to 422.  Severson has thus failed to meet the "heavy burden of showing that the award decision had no rational basis" in pointing to the resumes Ho`opono submitted.  *Centech*, 554 F. 3d at 1037 (citation omitted).

### C.  Phase-In Plan

The third requirement of the solicitation addressed by Severson is the phase-in plan sub-factor, which instructed offerors to address, *inter alia*, their "ability to ensure adequate personnel are hired and are available prior to [the] contract start date."  AR 22-407.  Ho`opono submitted its quote on June 2, 2020, *see* AR 37-686, with a proposed 30-day phase-in plan, *see* AR 37-734.  The anticipated contract start date was June 30, 2020.  *See* AR 22-414.  Given that Ho`opono's quote "on its face[] exceeds even the time between proposal submissions and [the] contract start date," Severson argues, "it was patent error for the [Navy] to overlook this critical flaw in Ho`opono's proposal."  Pl.'s Mot. at 16-17.  The government responds that the solicitation required "adequate staffing at the start of performance," not for the phase-in process to be complete prior to the contract start date.  Def.'s Cross-Mot. at 16.  Ho`opono emphasizes that the Navy "was equivocal about [the start] date, given [Severson's] persistent history of protests."  Def.-Intervenor's Resp. at 6.

In arguing that Ho`opono's phase-in plan was incompatible with the contract's start date, *see* Pl.'s Mot. at 16-17, Severson ignores the fact that the Performance Work Statement itself provides for flexibility regarding that date, *see* AR 22-414.  The Navy specified that June 30, 2020 was the "[a]nticipated" start date, and that the dates were "subject to change."  AR 22-414.  Moreover, Ho`opono stated in its quote that its phase-in plan "can be shortened . . . if necessary to accommodate a shorter turn around period."  AR 37-736.  While Severson is correct that Ho`opono's proposed timeline has employees starting in the fourth week of the transition period, *see* AR 37-737; Hr'g Tr. 63:4-5, this plan would still, in theory, "ensure [that] adequate personnel are hired and are available prior to the contract start date," *see* AR 22-407.  An overlap of Ho`opono's proposed phase-in plan with the contract start date does not render Ho`opono's quote "Unacceptable" under the phase-in plan sub-factor, especially when the Performance Work Statement does not require the transition period to be complete prior to the contract start date.  *See* AR 22-407.  The Navy engaged in one of the many rational "discretionary analyses frequently conducted by the government" in determining that Ho`opono's quote had met all of the requirements of the phase-in plan sub-factor.  *CSC Gov't Sols.*, 129 Fed. Cl. at 434 (citations omitted).

### II.  Severson's "Bait-and-Switch" Argument

Apart from the Navy's evaluation of technical aspects of Ho`opono's quote, Severson argues that "Ho`opono is also ineligible for [the] award overall because it engaged in a material misrepresentation/bait-and-switch."  Pl.'s Mot. at 19.  In its quote, Ho`opono stated that [xxx] would serve as Project Manager for the contract.  AR 37-708.  [xxx] is an employee of Blackstone Consulting, Ho`opono's contracting partner.  *See* AR 37-709; Def.-Intervenor's Resp. at 22.  Severson alleges that "Ho`opono never intended [xxx] to serve as the actual Project Manager for Ho`opono's eventual contract; it proposes her for the position solely to meet the

8

Solicitation criteria." Pl.'s Mot. at 20. To support its position, Severson points to communications between [xxx], the Vice President of Operations at Blackstone Consulting, and Severson's incumbent "program manager" at the Silver Dolphin Bistro. *Id*. at 19. Severson also refers to an injunction controlling Ho'opono's performance of a larger food-service contract respecting which [xxx] currently serves as "Project Manager." *Id*. at 22-24. Severson emphasizes that [xxx] would be agreeing to a "demotion" by assuming the role of Project Manager at the Silver Dolphin Bistro. *Id*. at 24 (emphasis removed). The government counters that "Blackstone intended for [xxx] to serve as the project manager[,] and that remains its intention." Def.'s Cross-Mot. at 19 (citing AR 69-1622). Ho`opono further emphasizes that Severson has failed to demonstrate that a "bait-and-switch" occurred. Def.-Intervenor's Resp. at 17-22.

"[T]o establish that a material misrepresentation was made, a protestor must show that an offeror made a false statement, and that the false statement was relied upon by the agency in awarding the contract to the offeror." *Bannum, Inc. v. United States*, 119 Fed. Cl. 291, 307 (2014) (citing *Optimization Consulting, Inc. v. United States*, 115 Fed. Cl. 78, 99 (2013)) (additional citations omitted). Protestors alleging a bait-and-switch, *i.e.*, "a maneuver in which an awardee proposes certain key personnel, then substitutes them for other individuals post-award," must show specifics. *Conley & Assocs., Inc. v. United States*, 142 Fed. Cl. 177, 182 (2019) (citing *Fulcra Worldwide, LLC v. United States*, 97 Fed. Cl. 523, 540 (2011)) (footnote omitted). A bait-and-switch consists of four elements:

> (1) The awardee represented in its proposal that it would rely on certain specified personnel in performing the services; (2) the agency relied on this representation in evaluating the proposal; (3) it was foreseeable that the individuals named in the proposal would not be available to perform the contract work; and (4) personnel other than those proposed are performing services.

*Id*. (quoting *Fulcra Worldwide*, 97 Fed. Cl. at 540).

Here, Severson falls short of establishing that Ho`opono made a material misrepresentation or engaged in a bait-and-switch. As for its allegation of a material misrepresentation, Severson fails to prove that Ho`opono "made a false statement." *Bannum*, 119 Fed. Cl. at 307 (citation omitted). While [xxx], Vice President at Blackstone Consulting, asked Severson's incumbent program manager whether he "wanted to continue [his] rol[e] as program manager at" the Silver Dolphin Bistro upon the award of the contract to Ho`opono, *see* AR 53-1381, there is no indication that [xxx] intended to swap out [xxx] for the incumbent manager, *see* AR 65-1603 ("We still intend for [xxx] to serve as our program manager and we have not offered the . . . position to anyone else."). Moreover, Severson's assertion that [xxx] would be agreeing to a demotion if she assumed the role of Project Manager at the Bistro is speculative. *See* Def.-Intervenor's Resp. at 19-20 (noting the potential career benefits to [xxx] under the contract). Conversations with Severson's incumbent program manager and Severson's opinion regarding [xxx] current employment do not give rise to an inference that Ho`opono planned or intended to employ someone other than [xxx] as Project Manager.

9

Of note, the contract under which [xxx] is currently employed is subject to a preliminary injunction. *See State of Hawaii, Dep't of Human Servs., Div. of Vocational Rehab., Ho`opono - Servs. for the Blind v. United States Marine Corps*, 2019 WL 3953950 (Fed. Cl. Aug. 21, 2019); Pl.'s Mot. at 22-23. "The function of preliminary injunctive relief is to preserve the status quo pending a determination of the action on the merits." *Litton Sys, Inc. v. Sundstrand Corp.*, 750 F.2d 952, 961 (Fed. Cir. 1984) (citing *King v. Saddleback Junior Coll. Dist.*, 425 F.2d 426, 427 (9th Cir. 1970)). Severson contends that transferring [xxx] from her current employment to the role of Project Manager at the Silver Dolphin Bistro risks "disturbing the status quo" on the contract subject to the preliminary injunction. Pl.'s Mot. at 24.

Given Ho`opono's insistence that it still intends to employ [xxx] as Project Manager for the contract, *see* Def.-Intervenor's Resp. at 19-20, however, Severson's argument falls short of establishing a bait-and-switch. There is no indication that "personnel other than those proposed are performing services" as Project Manager for the contract. *Conley & Assocs.*, 142 Fed. Cl. at 182 (citation omitted). While transferring [xxx] from the contract under which she is currently performing may risk a violation of the status quo for that contact, the possibility of a problematic business decision is insufficient to disqualify Ho`opono from receiving the award.

## CONCLUSION

For the reasons stated, Severson's motion for judgment on the administrative record is DENIED, and the government's cross-motion for judgment on the administrative record is GRANTED. Severson's motion for a permanent injunction is accordingly also DENIED.

The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow<br>
Charles F. Lettow<br>
Senior Judge